[File No. 5898.]

LORETTA BOETCHER, Respondent, v. G. J. BUDD, Appellant.

(237 N. W. 650.)

Opinion filed May 26, 1931.

*George A. McGee,* and *I. H. Breaw,* for appellant.

*E. J. McIlraith, E. R. Sinkler* and *G. O. Brekke,* for respondent.

BIRDZELL, J.   This is an action predicated upon neglect in caring. for the plaintiff while under the influence of an anesthetic in a hospital in Ambrose, as a result of which her leg is alleged to have been burned. by a hot water bottle.   A second cause of action for negligence in treat- ing the burn was dismissed at the close of the plaintiff's case.   The plaintiff recovered a judgment from which the instant appeal is prose- cuted.   The facts may be briefly stated as follows:   In October, 1929, the plaintiff became ill and called the defendant, a practicing physician at Ambrose, to diagnose and treat her case.   It was determined that she was suffering from acute appendicitis accompanied by peritonitis.   Act- ing upon the defendant's advice, the plaintiff went to the hospital in Ambrose where the defendant performed an abdominal operation upon her on the afternoon of the 9th of October.   Immediately after the operation she was placed in a bed which had been prepared by the nurses in the hospital and the following morning she became aware of the fact that she had sustained an injury, apparently by burning, to her right leg.   For several days the fact of the injury was not communicated to the doctor and it was treated by the nurses.   After the injury was made known to the defendant, however, he prescribed a treatment,

which was shown to have been a usual and proper treatment, consisting of the application of a solution of picric acid; and later, after the plaintiff had been discharged from the hospital, he further treated it with copper sulphate.

The principal question presented on this appeal is that concerning the liability of the defendant for the acts or omissions of the nurses which resulted in the injury complained of. It is the contention of the defendant and appellant that the injury was sustained in the course of post-operative treatment or care given by those in the employ of the hospital association, for whose acts or omissions the defendant is in no way chargeable. On the other hand, it is the contention of the respondent that the hospital was operated by the defendant, that the nurses were employed by him and that he is liable for their negligence on the principle of respondeat superior. At the time the plaintiff was treated in the hospital it was being operated under a contract entered into between the defendant and the Divide County Community Hospital Association of Ambrose. The contract was dated June 24, 1926, and it provided that the hospital association should erect a hospital building to be completed not later than November 1st of that year. It recited "that in order to operate said hospital it is necessary to have a manager, and the party of the first part hereby appoints the party of the second part as the medical director, manager and superintendent of the said hospital for a term of three years, which appointment is hereby accepted on the conditions as herein set forth." The first party was to maintain the exterior of the building in good repair and pay the real estate taxes, if any, and keep the cisterns supplied with water.

The party of the second part (the defendant) agreed to equip the hospital with furniture and fixtures "including operating table, X-ray machine, sterilizer, office fixtures, beds, bedding, furniture for wards as well as for private rooms, kitchen stoves and kitchen equipment, laundry equipment, and everything necessary to equip an up-to-date hospital, which is not otherwise herein mentioned," the total value to be not less than $5,000 and the equipment to remain the property of the party of the second part. It was stipulated that for his services as manager, medical director and superintendent, the defendant was to receive free living room, free board, office room, heat, light, laundry

and rental for one phone. He was required to keep a complete record of all money received and paid out in connection with the operation of the hospital and to render a statement at least once a year, "and in case of a surplus at the end of three years said surplus to be retained by the party of the second part as part of his compensation." It was agreed that in case of a deficit at the end of the first year either party should have a right to terminate the contract but that if the party of the first part "should see fit to pay said deficit to the party of the second part then and in that case the contract is operative for another year." There was a similar stipulation as to the second year and it was provided that in case a deficit were paid by the party of the first part the outstanding accounts were to be turned over to it and if more was collected than required to pay the deficit the surplus should be turned over to the party of the second part to be applied to the hospital operating fund until the end of the three years. The hosptial was to be operated as a public hospital to be open for outside doctors who wished to use the operating room and the services of the X-ray machine, provided they should pay the regular charges for such services.

Early in the morning following the operation the plaintiff testified that she became aware of the fact that her leg had been injured through hearing the nurses present discussing the matter. The evidence amply supports the conclusion that some time during the evening or the night following the operation, while the plaintiff was under the influence of the anesthetic, her leg was allowed to come in contact with a hot water bottle which had been placed in the bed in accordance with a usual practice of supplying artificial heat to a patient following an operation. There is no testimony to show that the defendant directly had anything to do with the handling of these hot water bottles unless the following given on his direct examination be considered such evidence. He said he helped to place the patient in bed, that the bottles were not there when the patient was put there but that they were there before. He saw them when he went into the room. Asked what was done with the hot water bottles then, he answered in one word "recovered." Asked what was done with them after the patient was put in bed he said, "I don't know," and stated he had given no instructions as to placing hot

water bottles in bed. But, in our view of the case, it is immaterial whether the defendant personally directed this phase of the treatment.

We are of the opinion that the contract under which the defendant was operating the hospital clearly made him a principal in its operation. The hospital was, under the contract, to be used by him in connection with his practice. It was to be wholly equipped by him and if he could operate it so as to make a profit the profit would belong to him. It was only in the event that there were no profits and that the association owning the building should see fit to pay the deficit that the association would have any interest in the proceeds of its operation, and in that event it merely had the right to collect the accounts until sufficient were paid to reimburse it for the deficit paid. The contract does not indicate that the association was under any obligation for operating expenses, and it had no right to any profit. Neither does the contract indicate that it was to have anything to say as to who should be employed, the number that should be employed, or the rate of compensation; or that the association could determine whom to admit and whom not to admit to the hospital. The defendant himself in a previous complaint where the hospital bill of this plaintiff was involved, which complaint is in evidence here, has construed the contract to the extent of alleging that the hospital was being *"maintained"* by him. The only provision in the contract which tends strongly to negative the operating of the hospital as a private hospital of the defendant is the stipulation that it shall be operated as a public hospital to be open for outside doctors who may wish to use the operating room and the services of the X-ray machine, subject to the proviso that they pay the regular charges for such services. This does not even provide that medical cases of outside doctors are to be received; neither are the charges for the operating room and the X-ray machine stipulated, nor would they belong to the association. We think the arrangement shown makes the hospital, to all intents and purposes, the private hospital of the defendant, from which it follows that he is liable for the negligence of his employees on the principle of respondeat superior. While in the case of Fawcett v. Ryder, 23 N. D. 20, 135 N. W. 800, 3 N. C. C. A. 153, this court pointed out that there was ample evidence from which the jury could infer that the defendant himself had placed the patient in

contact with the hot water bottle which did the damage, the opinion also covered the other alternative arising upon the assumption that the jury believed the negligence to be primarily that of the nurses employed by the defendant. On page 25 of the opinion, it is said:

"If, on the other hand, the negligence was that of the nurse who prepared the bed, the authorities then hold the defendant liable. We quote from 21 Cyc. 1111: 'A private hospital which is in its nature a charitable institution is not liable in damages to patients for the negligence or misconduct of its officers or employees, but the rule is otherwise where the hospital is not a charitable institution.'" (Citing authorities.)

The court had specifically held prior to this that the hospital in question was not a charitable institution but the private hospital of the defendant.

Numerous cases are cited by the appellant to the effect that a surgeon performing an operation is not liable for negligence of internes and nurses who are primarily charged with post-operative treatment; but these cases are not in point here by reason of the fact that the hospital in question was being maintained by the defendant, and not by a charitable organization.

Another assignment is predicated upon rulings of the court in the admission of testimony which, it is charged, permitted the plaintiff to testify as to the percentage of her incapacity resulting from the injury. An examination of the evidence in connection with which the rulings complained of were made shows that the testimony admitted amounts only to a description of the injury suffered, the nature of the wound and extent of its healing. It relates to the painful consequences, to the fact that it is covered with a scar tissue that cracks if not kept constantly softened with applications of vaseline and to the tendency of the limb in question to tire under strain much sooner than the uninjured leg. Such testimony was clearly admissible.

There are other assignments based upon rulings on evidence. We have carefully examined the record and find that the rulings complained of were in no case prejudicially erroneous. The record clearly shows that the defendant has had a fair trial in so far as the rulings upon evidence are concerned.

The appellant complains on account of an instruction which permit-

ted the jury to in effect determine the relationship existing between the hospital association and the defendant, which relation is evidenced by the contract above referred to. Since, as we view the contract, the defendant was operating the hospital in his own interest and as a principal, any error in instructions in this respect was error in his favor and he could not have been prejudiced by the instruction.

Finding no error in the record prejudicial to the defendant, it follows that the judgment appealed from must be affirmed. It is so ordered.

CHRISTIANSON, Ch. J., and NUESSLE, BURR, and BURKE, JJ., concur.